IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GANS, LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>APAXX, INC.,<br><br>　　Defendant. | Civil Action File<br>No. _____<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff, Gans, LLC ("**Gans**" or "**Plaintiff**"), submits the following as its Complaint against Defendant Apaxx, Inc. ("**Apaxx**" or "**Defendant**"):

## THE PARTIES, JURISDICTION, VENUE

1.

Plaintiff is a Georgia limited liability corporation with its principal place of business located in Atlanta, Georgia.

2.

Defendant is an Alabama corporation with its principal place of business located at 1102 Amherst Drive, Dothan, Alabama 36305-2021. Defendant may be served through its registered agent for service, Rolanda Paxton at 1502 Montcliff Drive, Dothan, Alabama 36303.

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the Parties to this matter are citizens of different states and the amount in controversy exceeds $75,000.00.

4.

Jurisdiction is proper in this Court as Plaintiff has its principal place of business in Atlanta, Georgia.

## FACTS COMMON TO ALL COUNTS

5.

Plaintiff is the owner of a commercial property commonly known as 3843 US Highway 41 North, Resaca, Georgia 30735 (the "**Property**").

6.

The Property's roof is a rubber membrane roof.  In early 2020, Plaintiff's tenants began to experience interior leaking due to weaknesses in the roof of the Property.

7.

Accordingly, and on or around May 3, 2020, Defendant submitted a proposal to Plaintiff to provide roofing construction services regarding the repair and replace aspects of Plaintiff's roof.  Defendant's proposal totaled $65,000.00.

8.

As a result, Plaintiff and Defendant entered into a written contract on or about June 16, 2020 that was supported by consideration for roofing repair and construction activities, including but not limited to the installation of a thermoplastic polyolefin membrane roofing system (the "**Contract**").

9.

Plaintiff hired Defendant to perform the construction activities included in the Contract in accordance with the proposal, Defendant's representations, and warranties provided to Plaintiff.

10.

In particular, Defendant represented to Plaintiff (as well as anyone who inspects its websites) that it is a "top roofing company" and an "industrial roofing expert."

11.

Pursuant to the Contract, Defendant provided a twenty (20) year warranty for both "Labor and Material" as well as Product.

12.

Pursuant to the terms and conditions of the Contract, Plaintiff paid 50% of the contract price, totaling $32,500.00, to Defendant prior to work commencing.

13.

Despite contracting to perform the necessary roof repairs on the Property in June of 2020, Defendant did not commence the agreed upon construction activities until September of 2020.

14.

Following the installation of the thermoplastic polyolefin membrane roofing system, it became apparent that Defendant failed to follow and comply with both industry standards and manufacturer specifications.

15.

This failure was evidenced by Plaintiff's discovery of the accumulation or "ponding" of water on the roof following its installation.

16.

The depth of ponding water on the roof ranged from .625" to 1.0625" deep.

17.

Plaintiff documented the standing water and rust on the roof of the Property and sent photographs to Defendant on December 1, 2021.

18.

Following this communication, Defendant returned to the Property on December 5, 2020 but failed to fix or address all the issues identified by Plaintiff.

19.

Following Defendant's presence on the Property, Plaintiff again requested that Plaintiff address its concerns regarding the roof, drainage, and gutter issues.

20.

Defendant did not respond to this inquiry and the deficiencies in the roofing system installed by Defendant persist.

21.

To date, the following roofing deficiencies are present on the Property, none of which have been remedied by Defendant:

a. The membrane installed by Defendant was not first adhered to the horizontal plane of the old edge metal and therefore, easily lifts away from the wall of the roof;

b. Wall flashing was not mechanically secured or sealed to the wall of the Property;

c. Mule-Hide specifications for membrane securing were not followed or installed above the loading dock openings in the exterior walls;

d. Defendant failed to install an appropriate roof draining system;

e. Defendant improperly cut notches into the gypsum (or rigid insulation boards) creating hurdles or dams over the roof preventing drainage;

f. The backs of gutters were not installed behind the existing edge metal of the rubber or asphalt of the roof, exposing the wood nailers;

g. The deck boards installed by Defendant under the new membrane are wet and saturated due to the improper installation of the membrane;

    h. Leaking is now evident on the interior of the Property; and

    i. Defendant improperly installed rigid insulation or flat stock which has caused ponding on the roof.[1]

22.

True and accurate depictions of rust, ponding, and accumulation of water on the roof of the Property following Defendant's installation is included below:



---

[1] Plaintiff notes that this list is preliminary in nature and is not meant to be an exhaustive list of the damage to the roof of the Property caused by Defendant.





23.

Below is a true and accurate depiction of the membrane being easily lifted away from the wall of the Property following Defendant's installation:



24.

A true and correct depiction of Defendant's failure to secure or seal the wall flashing to the wall of the Property is below:



25.

A true and accurate depiction of the wet nailer behind the roof edge due to the improper setting of the gutter is included below:



26.

As a direct and proximate cause of Defendant's improper installation of the roof on the Property, the structure and overall integrity of the roof and supporting structures have been damaged.

27.

In order to repair the damage to the roof of the Property, Plaintiff requested that a Mule-Hide[2] representative inspect the Property. Following this inspection,

---

[2] Defendant installed a Mule-Hide Products Company thermoplastic polyolefin membrane onto the roof of the Property, despite contracting to install a Carlisle membrane.

it was determined that because the interior of the building is leaking again and because the deck boards installed under the new membrane are wet, the membrane must be completely removed, the draining must be corrected and reinstalled, the gypsum deck has to be dried out and a new membrane must be installed.

28.

Repair costs will exceed $143,000.00.

**COUNT 1: BREACH OF CONTRACT**

29.

Plaintiff realleges, as if fully set forth herein, each and every allegation contained in Paragraph 1- 28 as if fully set forth herein.

30.

As described above, Plaintiff entered into a Contract with Defendant regarding the repair and replacement of the roof on the Property.

31.

Pursuant to the Contract, Defendant warranted that its work would be of good quality, without material defect, performed in accordance with all applicable building codes and industry standards.

32.

Defendant held itself out as a qualified and experienced roofing contractor, capable in all aspects of performing the work called for.

33.

Defendant breached the terms and conditions of the Contract when it improperly installed the thermoplastic polyolefin membrane on the roof of the Property as well as other services and scopes of work included in the Contract.

34.

Defendant further breached the terms and conditions of the Contract based upon the deficiencies outlined in Paragraph 18(a)-(h).

35.

As a direct and proximate result of Defendant's breach of the Contract, Plaintiff has not received the benefit of the bargain.

36.

As a direct and proximate result of Defendant's breach of the Contract, Plaintiff has suffered and will continue to suffer damage to the structure of the Property as well as monetary damage.

37.

Plaintiff will continue to incur damages as a result of Defendant's breach of Contract as described herein until at least the time the Property is fully repaired. The cost to make the immediate and necessary repairs to the roof of the Property is in excess of $143,000.

38.

All damages to Plaintiff described herein are the direct and proximate result of Defendant's breach of the Contract, and are ongoing and continue to mount. As a result, Plaintiff has suffered consequential damages in an amount to be determined at trial.

39.

As a result, Defendant is liable to Plaintiff for all damages sustained by Plaintiff in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest, and attorney's fees.

**COUNT II: BREACH OF IMPLIED CONTRACT**

40.

Plaintiff realleges, as if fully set forth herein, every allegation contained in Paragraph 1- 39 as if fully set forth herein.

41.

Defendant made a proposal to Plaintiff for a certain scope of work, including the proper installation of a thermoplastic polyolefin membrane on the roof of the Property.

42.

Plaintiff accepted Defendant's proposal and Defendant installed a thermoplastic polyolefin membrane on the roof of the Property. Plaintiff paid Defendant 50% of the contracted price for Defendant's services and scope.

43.

Plaintiff would not have allowed and/or entrusted Defendant to work on the Property in the absence of an implied or express contract between them.

44.

Defendant breached the implied contract it made with Plaintiff by breaching its warranties and improperly installing the thermoplastic polyolefin membrane on the roof of the Property.

45.

As a direct and proximate cause of Defendant's breach of the implied contract with Plaintiff, Plaintiff sustained actual losses and damages as described in detail above.

## COUNT III: NEGLIGENCE

46.

Plaintiff realleges, as if fully set forth herein, every allegation contained in Paragraph 1- 45 as if fully set forth herein.

47.

Defendant was negligent in the construction of the roof on the Property.

48.

Defendant had a duty to properly, adequately and completely perform their scope of work and certain services in compliance with the Contract, specifications, applicable industry standards, building codes, and manufacturer specifications.

49.

Defendant breached its duty and was negligent in failing to provide its scope of work in compliance with the Contract, specifications, applicable industry standards, building codes, and manufacturer specifications.

50.

As a direct and proximate result of Defendant's negligence, Plaintiff has suffered actual damages related to both the structure of the Property and the costs associated with repairing the damage caused by Defendant.

51.

Plaintiff is entitled to judgment against Defendant for all amounts that Plaintiff incurs as a result of repairing Defendant's negligence and for all other actual, consequential, and special damages which may be afforded to Plaintiff.

52.

As a direct and proximate result of Defendant's negligence, the cost of repairing the damage to the Property is in excess of $143,000. Accordingly, Plaintiff is entitled to recover all general, special, and all other allowable damages as permitted by Georgia law from Defendant in all amounts to be proven at trial.

53.

As a result, Defendant is liable to Plaintiff for all damages sustained by Plaintiff in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest, and attorneys' fees.

**COUNT IV: BREACH OF ACTUAL AND IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**

54.

Plaintiff realleges, as if fully set forth herein, every allegation contained in Paragraph 1- 53 as if fully set forth herein.

55.

As part of its work, Defendant was selling a roofing system, and it extended warranties, both express and implied, to Plaintiff concerning the work performed and products installed on the roof of the Property.

56.

Additionally, in agreeing to undertake repairs to the Property, Defendant impliedly warrantied that it would make those repairs in a fit and workmanlike manner.

57.

Defendant breached its warranties when, in attempting to install, repair and install the roof of the Property, it failed to exercise a reasonable degree of care, skill, and ability under similar conditions and like surrounding circumstances as is ordinarily employed by others in the same profession, including industry standards and manufacturer specifications.

58.

Plaintiff will continue to incur damages as a result of Defendant's breach of warranty as described herein until at least the time the Property is fully repaired. The cost to make the immediate and necessary repairs to the roof of the Property is in excess of $143,000.

59.

As a result of Defendant's breach of warranties, Plaintiff is entitled to recover all general, special, compensatory, economic, and all other allowable damages as permitted by Georgia law from Defendant.

60.

As a result, Defendant is liable to Plaintiff for all damages sustained by Plaintiff in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest, and attorney's fees.

### COUNT V: ATTORNEYS' FEES

61.

Plaintiff realleges, as if fully set forth herein, every allegation contained in Paragraph 1- 60 as if fully set forth herein.

62.

Defendant has been stubbornly litigious and has caused Plaintiff unnecessary trouble and expense in forcing Plaintiff to pursue this action.

63.

As a result, Plaintiff is entitled to recover its attorneys' fees and costs of litigation as provided in O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff Gans, LLC asks this Court for the following relief:

1. That Judgement be entered in Plaintiff's favor on all counts as pleaded herein;

2. That Plaintiff be awarded all special, compensatory, and all other elements of damage allowable under Georgia law;

3. That this Court aware Plaintiff its attorneys' fees;

4. That this Court award Plaintiff any applicable pre-judgment interest; and

5. That this Court order any further relief to which it deems fair and proper.

This 26th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Frederick Owen Ferrand*
Frederick Owen Ferrand
Georgia Bar No. 259169
Sabrina L. Atkins
Georgia Bar No. 567762
**Attorneys for Plaintiff**

1355 Peachtree St., N.E., Suite 300
Atlanta, GA  30309
Ph:  404-874-8800
Fx:  404-888-6199
fred.ferrand@swiftcurrie.com
sabrina.atkins@swiftcurrie.com

4833-5985-4053, v. 1